**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Angela Parker-Reed,

     Plaintiff,

  v.

Primal Vantage Company, Inc.,

     Defendant.

**Case No. 2:19-cv-1745
Judge Michael H. Watson
Magistrate Judge Jolson**

## OPINION AND ORDER

Angela Parker-Reed ("Plaintiff") brings this personal injury action against Defendant, Primal Vantage Company, Inc. ("Defendant"). Defendant moves for summary judgment, ECF No. 33, and to exclude Plaintiff's expert, ECF No. 34. Plaintiff moves for leave to file a sur-reply. ECF No. 39.

Plaintiff's Motion, ECF No. 39, is **DENIED**; the Court is capable of assessing the arguments made in the Reply brief without the assistance of a Sur-Reply. The Court has considered the remaining motions and the briefing thereon. For the following reasons, Defendant's Motion to Exclude, ECF No. 34, is **DENIED**, and Defendant's Motion for Summary Judgement, ECF No. 33, is **GRANTED IN PART** and **DENIED IN PART**.

### I.    FACTS

Plaintiff suffered an injury after falling from a "stick ladder" manufactured by Defendant. Ex. H at 110–13, ECF No. 33-9. Defendant's stick ladder provides access to tree stands used during hunting. Ex. A at 2, ECF No. 33-2.

Upon purchase, the stick ladder must be assembled. *Id.* at 6–7, ECF No. 33-2. The product includes multiple parts with crimped tubing at the end of each side to allow the parts to be fitted together vertically. *Id.* at 7, ECF No. 33-2. Each part of the stick ladder is then strapped to the chosen tree using deliberately placed buckle straps provided by Defendant upon purchase of the product. *Id.* at 8, ECF No. 33-2. The installation instructions state that users should "[s]ecure [each] section to the tree before climbing" onto it. *Id*. The instructions also advise that the chosen "tree should . . . have a diameter between 9 and 18 inches." *Id.* at 5, ECF No. 33-2. Finally, multiple warnings are included, urging individuals to always use a safety harness attached to the tree with a lineman's belt to secure the user to the tree while using the product:

> "**ALWAYS** wear a Fall Arrest System (FAS) (Harness) consisting of a full body safety harness with lineman's belt after leaving the ground. You **MUST** stay connected at all times after leaving the ground. If you are not wearing an FAS that meets ASTM standards, ***DO NOT leave the ground***. Failure to wear an FAS may result in serious injury or death."

*Id.* at 10, ECF No. 33-2. The requisite safety harness and lineman's belt are not included in Defendant's product but are included with the purchase of one of Defendant's tree stands. Ex. M at 80–83, ECF No. 35-4. Plaintiff had assembled stick ladders similar to Defendant's in the past. Ex. H at 38–42, ECF No. 33-9. Additionally, Plaintiff owned a safety harness at the time of the accident and had previously used it. *Id.* at 60–64, ECF No. 33-9.

On the day of the accident, Plaintiff was not wearing a safety harness while she was installing the stick ladder. *Id.* at 60, ECF No. 33-9. Plaintiff also replaced Defendant's buckle straps with rachet straps. *Id.* at 46–48, ECF No. 33-9. According to Plaintiff, as she was reaching to pull a ratchet strap around the tree to secure a portion of the stick ladder to the tree, the top portion of the stick ladder was not strong enough to hold her and thus bent under her weight at the stick ladder's joint causing her to fall. *Id.* at 109–110, ECF No. 33-9; Resp. 9–11, ECF No. 35. Plaintiff claims that this was due to a design defect in the crimped tubing of Defendant's stick ladder. *Id.* According to Plaintiff's expert, Mr. Munsell, if the tubing were a different shape and the brackets securing the stick ladder to the tree were closer together, the accident would not have occurred. Ex. M at 58–59, ECF No. 35-4; Ex. L at 69–70, ECF No. 35-3. Mr. Munsell opined that in its current design, the joint is so weak that even a slight shift of weight to an off-center point on an unattached portion of the stick ladder will cause the stick ladder's joint to bend. Ex. L at 23–25, ECF No. 35-3.

## II.    MOTION TO EXCLUDE

Defendant alleges that Plaintiff's fall and subsequent injury were caused by her failure to follow the applicable safety instructions. Plaintiff asserts that her fall was the result of both a defective design and inadequate warnings. Plaintiff seeks to offer expert testimony by Mr. Munsell to support her claims. Defendant has moved to exclude Mr. Munsell's proposed testimony under Federal Rule of Evidence 702.

## A.    Mr. Munsell

Mr. Munsell is a mechanical engineer with multiple degrees.  Resp. 1, ECF No. 35-2.  He has a bachelor's degree in mechanical engineering; a master's degree in the history of science, technology, and medicine; and is currently pursuing a Ph.D.  *Id.*  He is licensed in the state of Oklahoma as a professional engineer.  He has conducted research into safe design principles, specializes in "failure analysis of mechanical systems," and has investigated issues related to the failures of hunting stands and climbing devices.  *Id.*  His writing has been published by the American Society of Mechanical Engineers, and he reviews other articles for the same organization.  *Id.*

In his report, Mr. Munsell discussed relevant literature, Plaintiff's accident, and the subject stick ladder.  Rep. 3–4, ECF No. 35-2.  He represents that he conducted a series of tests on a stick ladder identical to the one Plaintiff used.  *Id.* at 4.  During these tests, he measured the amount of force exerted on the stick ladder during assembly.  *Id.* at 5–6.  He provides a detailed discussion of his findings, opinions, and conclusions.  *Id.* at 6–9.

## B.    Standard

The admissibility of expert witness testimony is governed by Federal Rules of Evidence 702 and 703.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule reflects the well-established judicial precedent that district courts must act as "gatekeepers" in determining the admissibility of such testimony. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007) (discussing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "[T]he gatekeeping inquiry must be tied to the facts of a particular case, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 430 (internal quotation marks and citation omitted).

Although "not a definitive checklist or test," some factors that may bear on the third part of the Rule 702 analysis are:

(1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* at 429–30 (internal quotation marks and citations omitted). Moreover, "expert testimony prepared solely for purposes of litigation, as opposed to testimony flowing naturally from an expert's line of scientific research or technical work, should be viewed with some caution." *Id.* at 434.

Additionally, Federal Rule of Evidence 703 permits an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Moreover, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id*.

The proponent of expert testimony must establish its admissibility by a preponderance of proof. *Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10). Whether to admit expert testimony is within the district court's discretion. *Johnson*, 484 F.3d at 429 (citation omitted).

## C.   Analysis

Defendant puts forth several different arguments in favor of excluding Mr. Munsell's testimony. Some of these arguments, like those involving the factual issues around what happened during the accident, are inapplicable to a motion in limine. Defendant does appropriately assert two broad attacks on Mr. Munsell's opinions. First, it contends that Mr. Munsell is unqualified as an expert. Second, Defendant maintains that Mr. Munsell used unreliable testing to reach his conclusions.

As an initial matter, both parties agree that Mr. Munsell does not have an opinion regarding whether there was a manufacturing defect. Consequently, Mr.

Munsell shall not be permitted to testify at trial on the topic of manufacturing defect.[1]

### 1. Mr. Munsell's Qualifications

Defendant argues that Mr. Munsell is unqualified for several reasons. First, Defendant points out that Mr. Munsell is neither a human factors expert nor a metallurgist. Next, Defendant contends that Mr. Munsell is unqualified because he lacks experience with tree stands and stick ladders. Finally, Defendant argues that Mr. Munsell is unqualified to give opinions on adequate warnings because he has never designed warning labels. These arguments are unpersuasive.

"To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). This requirement, however, "has always been treated liberally." *Id.* (citation omitted). The issue "is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Rose v. Truck Ctrs., Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010) (internal quotation marks and citation omitted). Further, the Sixth Circuit

---

[1] According to Defendant, there is a laundry list of topics on which Mr. Munsell has stated he has no opinion. From a review of the deposition transcript, however, the Court concludes that Mr. Munsell only unequivocally expressed that he had no opinion as to a manufacturing defect. In all other instances, the deposition testimony is too ambiguous for the Court to find that Mr. Mansell disclaimed having any opinion on those topics.

has explained that courts should "take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy the requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir.2000)). Where an expert has years of experience in a particular field, she is qualified to give testimony on topics within that field. *See, e.g., United States v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012) ("Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 909 (6th Cir. 2004) (noting that the proposed expert "had considerable experience in the field of criminology and because he was testifying concerning a discrete area of police practices about which he had specialized knowledge, we hold that the district court did not abuse its considerable discretion in admitting [the] testimony"); *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293–94 (6th Cir. 2007) (finding no abuse of discretion where the district court allowed a former police officer with twenty-eight years of experience to testify about threat assessment).

Mr. Munsell is qualified. He is a mechanical engineer who specializes in analyzing the failures of mechanical systems. Although he does not have experience specifically with stick ladders, he has previously investigated issues related to the failures of hunting stands and climbing devices. This experience is sufficient to qualify him as an expert for his proposed testimony regarding the

alleged design defect, as at least some of the principles of mechanical engineering and failures of mechanical systems apply to stick ladders. *See Berry v. City of Detroit*, 25 F.3d 1342, 1349–50 (6th Cir. 1994) ("[I]f one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee.").

Further, Defendant argues that Mr. Munsell is not qualified to give an opinion on the adequacy of the warnings because he "has no expertise in designing or formulating warnings and instructions." Mot. 16, ECF No. 34–1. However, Defendant has cited no caselaw supporting its proposition that mechanical engineers are unqualified to give opinions on product warnings, nor has the Court found any such authority. *Contra Brewer v. Webster Cty. Coal Corp.*, 145 F.3d 1330 (Table) (6th Cir. 1998) (affirming the district court's decision to allow a mechanical engineer to offer expert testimony about an alleged failure-to-warn). However, the Court need not address this portion of Defendant's arguments because the failure-to-warn claim cannot survive summary judgment, as explained below. Accordingly, Defendant's arguments that Mr. Munsell is unqualified are without merit.

### 2. Reliability of Mr. Munsell's Opinions

Defendant also asserts that Mr. Munsell's opinions are unreliable. As to the failure-to-warn opinions, Defendant contends Plaintiff's alleged negligence, not any possibly inadequate warning, was the cause of Plaintiff's injuries. Again,

the Court need not address this argument as the failure-to-warn claim does not survive summary judgment.

Defendant claims Mr. Munsell's opinions regarding design defect are unreliable because they are based on "rigged" testing.  Mot. Exclude 15, ECF No. 34.  Specifically, Defendant asserts that Mr. Munsell did not "conduct any testing of the subject stick ladder as intended to be used by the manufacturer." *Id.*  Defendant also contends that even with this "rigged testing," Mr. Munsell's "testing and calculations do not provide any basis for his opinion."  *Id.*  Defendant also argues that Mr. Munsell's alleged failure to provide an alternative design or to rule out other possible causes of the accident render his opinions unreliable. *Id.* at 15–17.

When determining whether an expert's proposed testimony is reliable, courts must conduct a "preliminary inquiry as to whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (citing *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000)).  However, experts "are permitted a wide latitude in their opinions so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Geers v. Provident Life & Accident Ins. Co.,* No. 1:06-CV-830, 2008 WL 11352627, at *1 (S.D. Ohio Sept. 5, 2008) (quoting *Daubert*, 509 U.S. at 592).

Here, Mr. Munsell's design-defect opinions are admissible.  His alleged failure to test the stick ladder under the conditions specified by Defendant does not change the fact that his findings and conclusions have a reasonable factual basis—the quantitative analysis of data produced by his stress testing of the stick ladder.  *See United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded.  Rather, it is up to opposing counsel to inquire into the expert's factual basis.").  Defendant's challenge to the types of situations in which Mr. Munsell tested the stick ladder therefore goes to weight and not admissibility.  *C.f. In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–32 (6th Cir. 2008).  Defendant may properly address its concerns during cross-examination.  *See Daubert,* 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")  Accordingly, Defendant's arguments against the reliability of Mr. Munsell's design-defect opinions are not well taken.

Having determined that Mr. Munsell's testimony regarding design-defect is admissible, the Court now turns to Defendant's Motion for Summary Judgment.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   Standard of review

The standard governing summary judgment is set forth in Federal Rule of

Civil Procedure 56(a), which provides: "The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to

make a showing sufficient to establish the existence of an element essential to

that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v.*

*Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all

reasonable inferences in favor of the nonmoving party, who must set forth

specific facts showing there is a genuine dispute of material fact for trial, and the

Court must refrain from making credibility determinations or weighing the

evidence.  *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986); *Pittman v.*

*Cuyahoga Cty. Dept. of Children and Family Serv.*, 640 F.3d 716, 723 (6th Cir.

2011).  The Court disregards all evidence favorable to the moving party that the

jury would not be required to believe.  *Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150–51 (2000).  Summary judgment will not lie if the dispute

about a material fact is genuine, "that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact.  *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

**B.    Analysis**

In her Complaint, Plaintiff advanced seven claims: (1) defective design (Count I); (2) defective manufacturing (Count I)[2]; (3) failure-to-warn (Count II); (4) negligent design and manufacturing defect (Count III); (5) negligent failure-to-warn; (Count IV); (6) breach of implied warranty of fitness (Count V); and (7) breach of implied warranty of merchantability (Count VI).

As an initial matter, both parties agree that Plaintiff's common-law claims (Counts III–VI) should be dismissed.  Mot. Summ J. 31–33, ECF No. 33; Resp. 27, ECF No. 35.  Plaintiff also represents that she "does not intend to maintain a manufacturing defect claim at trial."  Resp. 21, ECF No. 35.  The parties have not indicated whether these claims are to be dismissed with or without prejudice.  Consequently, the parties are **ORDERED** to file a joint motion to dismiss the

---

[2] Plaintiff included both the design defect and manufacturing defect in Count I. *See* Compl. ¶¶ 28–35.

manufacturing defect portion of Count I and Counts III–VI, indicating whether the claims are to be dismissed with or without prejudice, by **May 3, 2021**.

### 1. Defective Design

Plaintiff first asserts that Defendant's stick ladder has a defective design. Plaintiff argues that the design of the stick ladder was defective because the stick ladder bent at its joint under Plaintiff's weight while she was using the product in a reasonably foreseeable manner. Defendant argues that it was not foreseeable that a user would fail to follow Defendant's instructions to wear a safety harness, to choose a tree with a proper diameter, and to not step onto unsupported sections of the stick ladder as Plaintiff did on this occasion. Thus, according to Defendant, Plaintiff's negligence was the cause of her injury, not any design defect in the stick ladder.

A product is defective in its design if the *foreseeable* risks caused by the product's design surpass the benefits of the design at the time the product left the defendant's control. Ohio Rev. Code § 2307.75(A). Alternatively, a product has a defective design if it is "more dangerous than an ordinary person would expect when used in a reasonably foreseeable manner." *Welch Sand & Gravel v. O&K Trojan*, 668 N.E.2d 529, 533 (Ohio Ct. App. 1995) (citing Ohio Rev. Code § 2307.75(B)). If the plaintiff's injury "was caused by an inherent characteristic of the product" that is necessary to the product's "usefulness or desirability" or no "practical and technically feasible alternative design" existed, a product is not defective in design. Ohio Rev. Code § 2307.75(E)–(F).

The foreseeable risks, benefits, and uses of a product are normally questions of fact, and, thus, summary judgment is rarely granted when one of these elements is in dispute. *Welch Sand & Gravel*, 668 N.E.2d at 533–34. Summary judgment is granted for a manufacturer only when "a product is used in a capacity which is clearly unforeseeable by the manufacturer and completely incompatible with the product's design." *Mitchell v. Michael Weinig, Inc.*, No. 2:17-CV-905, 2020 WL 5798043, at *7 (S.D. Ohio Sept. 29, 2020) (quoting *Welch Sand & Gravel*, 668 N.E.2d at 533). Indeed, although a "manufacturer is not responsible for all product misuses," a "failure to design a product to prevent a foreseeable misuse can be a design defect." *Id.* at *6 (internal quotations omitted).

Plaintiff maintains that her misuse of Defendant's stick ladder was foreseeable to Defendant. Specifically, Plaintiff contends that Defendant's inclusion of specific warnings that users wear safety harnesses, use a tree of a specified diameter, and not climb onto unsupported sections of the stick ladder indicates that it was foreseeable to Defendant that users may fail to take such precautions. The Court agrees and finds Plaintiff has presented sufficient evidence to at least show that her misuse of Defendant's stick ladder was not "clearly unforeseeable" to Defendant. *See Mitchell*, 2020 WL 5798043, at *8 (denying summary judgment on the design defect claim because the plaintiff's evidence—including the defendant's explicit warning not to walk onto the chain conveyor—established that the plaintiff's misuse of the defendant's product by

walking onto the chain conveyor was not "clearly unforeseeable" to the defendant). Additionally, although Plaintiff may have misused the product, her alleged misuses were not "completely incompatible with the product's design." *See Welch Sand & Gravel,* 668 N.E.2d at 533. Moreover, the presence of conflicting expert testimony presented by Plaintiff and Defendant makes summary judgement inappropriate on the design defect claim.

Defendant's arguments to the contrary are unavailing. Defendant argues that it cannot be held liable for Plaintiff's injury because she substantially altered the product by using rachet straps instead of the included straps. Although Ohio does not appear to have addressed whether determining if a product has been *substantially* altered is a question of fact, other jurisdictions have determined that it is an issue for the jury. *See, e.g., Jiminez v. Dreis & Krump Mfg. Co.*, 736 F.2d 51, 54 (2d Cir. 1984) (noting that "the relationship between a substantial alteration to a machine and the causation of the injury is a jury question"); *Specter v. Texas Turbine Conversions, Inc.*, No. 3:17-CV-00194-TMB, 2020 WL 7360146, at **4–5 (D. Alaska Dec. 14, 2020) (concluding that whether the alterations were substantial is a jury question); *Pappas v. Ford Motor Co.,* 7 F. Supp. 2d 22, 27 (D.D.C. 1998) ("As in this case, where the defendant in a design defect case raises an alternative theory for the cause of the accident, such as a material alteration of the product, that is a question for the jury."). Based on the evidence in this case, this Court agrees it is for a jury to determine whether Plaintiff's misuse amounted to a substantial alteration of the product.

Defendant further claims that Plaintiff's negligence, not its product, was the proximate cause of Plaintiff's injuries. Specifically, Defendant argues that Plaintiff's general negligence and misuse of the stick ladder were intervening causes to her injury. However, "[i]n any case where there is a question upon which reasonable minds might differ as to the foreseeability of a particular risk or the character of an intervening cause, the question is one for submission to the jury under proper instructions as to proximate cause." *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 543 (6th Cir. 2000) (quoting *Ohio Fair Plan Underwriting Ass'n v. Arcara*, 65 Ohio App. 2d 169, 417 N.E.2d 115, 120 (1979)).

Similarly, Defendant's arguments that Plaintiff assumed the risk of using the stick ladder are better left to a jury. *Bailey v. V & O Press Co.*, 770 F.2d 601, 607 (6th Cir. 1985) ("The issue of assumption of risk is ordinarily to be determined by the jury."); *see also Simko v. CMI Terex Corp.*, No. 1:09CV757, 2010 WL 11681843, at *3 (N.D. Ohio Feb. 1, 2010) (observing in a defective design claim that "assumption of the risk inherently involves a question of fact") (quoting *Briney v. Sears, Roebuck & Company*, 782 F.2d 585, 590 (6th Cir. 1986)).

Finally, Defendant argues that Mr. Munsell did not provide an alternative design. The failure to provide an alternative design could be fatal to Plaintiff's claim. *See Rees v. W.M. Barr & Co., Inc.,* 736 F. App'x 119, 129 (6th Cir. 2018) ("[T]o survive summary judgment, a plaintiff must produce sufficient evidence of a safe alternative design.") From a review of Mr. Munsell's Report and Plaintiff's

Response, however, the Court concludes that Plaintiff does offer an alternative design. Resp. 18, ECF No. 35; Ex. K 7, ECF No. 35–2.

Thus, Defendant's arguments are without merit, and, as to the defective design claim, Defendant's Motion for Summary Judgment is **DENIED**.

### 2. Failure to Warn

Plaintiff also asserts a failure-to-warn claim. According to Plaintiff, Defendant's warnings are inadequate "because they fail to alert the user not to apply any load to the unsupported, or unsecured, ladder sections." Resp. 12, ECF No. 35. Defendant asserts that this "alleged inadequacy in the warnings is purely speculative" and that Plaintiff has failed to show that any alleged inadequacy was the proximate cause of her injury. Mot. Summ. J. 26, ECF No. 33.

Plaintiff brings this claim under OLAP, which provides in pertinent part as follows:

> (a) the manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>
> (b) the manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code § 2307.76(A).

To prove a failure to warn claim, a plaintiff must establish that there existed "(1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003) (citing *Briney v. Sears, Roebuck & Co.*, 782 F.2d 585, 587 (6th Cir.1986)). A defendant manufacturer does not have a duty to warn "about an open and obvious risk or a risk that is a matter of common knowledge." Ohio Rev. Code § 2307.76(B). Additionally, a defendant manufacturer has a duty "to exercise reasonable care [in giving] the user information which [the defendant] has and which [the defendant] should realize would be necessary to make the use of the product safe." *Miles v. Kohli Assocs.*, 917 F.2d 235, 245 (6th Cir. 1990) (quoting *Hargis v. Doe*, 443 N.E.2d 1008, 1010 (1981)).

The Court first considers whether there is any genuine dispute of material fact as to proximate cause. In Ohio, "a plaintiff asserting a products liability 'claim [ ] based on failure to provide adequate warnings not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury.'" *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 450 (6th Cir. 2000) (quoting *Seley v. G.D. Searle Co.*, 67 Ohio St. 2d 192, 423 N.E.2d 831 (1981)), *superseded on other grounds by* Ohio Rev. Code § 2307.75. With respect to proximate causation in failure to warn cases, "the Ohio Supreme Court divided proximate causation . . . into two sub-issues:

(1) whether lack of adequate warnings contributed to the plaintiff's [use of the product], and (2) whether [use of the product] constitute[d] a proximate cause of the plaintiff's injury." *Hisrich*, 226 F.3d at 451 (alterations in original) (internal quotation marks and citation omitted).

Further, there are competing presumptions under Ohio law regarding the first prong—whether the lack of adequate warnings contributed to the plaintiff's use of a product. *Id.* The first presumption is "that an adequate warning, if given, will be read and heeded." *Id.* (quoting *Seley*, 67 Ohio St. 2d at 200, 423 N.E.2d 831). This presumption works in favor of a manufacturer. *Id.*

Conversely, where the manufacturer either gives no warning or gives an inadequate warning, a rebuttable presumption arises that the failure to adequately warn was a proximate cause of the plaintiff's use of the product. *Id.* If the manufacturer fails to present rebuttal evidence, that presumption is sufficient to satisfy the first prong of the proximate cause element of a failure to warn claim. *Id.*

A manufacturer can rebut the presumption of proximate cause that arises upon the showing of an inadequate warning, however, by showing that a plaintiff did not read or follow the warning. In such an instance, where the plaintiff did not read the inadequate warning, the inadequacy of the warning could not have proximately caused the plaintiff's use of the product. Indeed, "Ohio law is clear that where a plaintiff fails to read and/or follow clear instructions, and where the accident would not have happened had the plaintiff followed the instructions, the

plaintiff's failure to adequately warn claim fails for lack of proximate cause."
*Broyles v. Kasper Mach. Co.,* 517 F. App'x 345, 349 (6th Cir. 2013) (quoting
*Wade v. Diamant Boart, Inc.*, 179 F. App'x 352, 355–56 (6th Cir. 2006)); *see also*
*Hart v. Honeywell Int'l*, No. 1:15 CV 10000, 2017 WL 1235000, at *4 (N.D. Ohio
Apr. 4, 2017), *on reconsideration in part sub nom. Hart v. Honeywell Int'l, Inc.,*
No. 1:15 CV 10000, 2017 WL 2693558 (N.D. Ohio June 21, 2017) ("A defendant
may rebut this presumption with affirmative evidence that a plaintiff either did not
read a warning that was provided, or would not have heeded an adequate
warning, had it been provided."); *Lawrence v. Raymond Corp.*, *No.* 3:09 CV
1067, 2011 WL 3418324, at *10 (N.D. Ohio Aug. 4, 2011) (finding that because
the warning was in plain view, the plaintiff's failure to read the same "prevents the
presumption of proximate cause" and dooms the plaintiff's warning defect claim);
*Freas v. Prater Constr. Corp.*, 60 Ohio St. 3d 6, 10, 573 N.E.2d 27, 31 (1991)
(upholding judgment for the defendant in a failure-to-warn claim where the
injured party "failed to follow the . . . instructions and comply with the warnings as
provided in the manual"); *Webb v. Smith*, 9th Dist. Summit No. 18859, 1998 WL
801944, at *5 (Nov. 18, 1998) ("Because nobody read or relied on the warning,
any alleged inadequacy in the warning was not a proximate cause for Webb's
injury.").

     Even assuming that Plaintiff could show that the warnings were
inadequate, she cannot satisfy the proximate cause prong.  Plaintiff admits that
she read the warnings and also admits that she did not follow them.  *See, e.g.*,

Ex. H at 44, 60. For example, Plaintiff admits that she knew the warnings said to use a safety harness; said that "every time" she used a tree stand, she would also use a safety harness; and confirmed that she owned a safety harness. *Id.* at 42, 55–60. However, she did not use the safety harness on the day of the accident. *Id.* at 60. As her own expert testified, if she had been wearing a safety harness, she would not have fallen. Ex. G at 49. Thus, "the accident would not have happened had the plaintiff followed the instructions," and so Plaintiff's "failure to adequately warn claim fails for lack of proximate cause." *Broyles*, 517 F. App'x at 349 (quoting *Wade*, 179 F. App'x at 355–56). Accordingly, Defendant's Motion for Summary Judgment is granted as to the failure-to-warn claim (Count II), and that claim is **DISMISSED WITH PREJUDICE**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude, ECF No. 34, is **DENIED**, and Defendant's Motion for Summary Judgement, ECF No. 33, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion for Leave to File *Sur-Reply*, ECF No. 39, is **DENIED**. The Clerk is **DIRECTED** to **TERMINATE** ECF Nos. 33, 34, and 39 as pending motions. The sole remaining claim for trial is Plaintiff's design-defect claim.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**